**HOWARD LAW, PC**
VINCENT D. HOWARD (SBN 232478)
vhoward@howardlawpc.com
GREGORY H. D. ALUMIT (SBN 257124)
galumit@howardlawpc.com
675 Anton Boulevard, First Floor
Costa Mesa, CA 92626
Tel.: (800) 872-5925
Fax: (888) 533-7310

**ARBOGAST LAW**
A Professional Corporation
DAVID M. ARBOGAST (SBN 167571)
david@arbogastlawpc.com
8117 W. Manchester Ave., Suite 530
Playa Del Rey, CA 90293
Tel.: (310) 477-7200
Fax: (310) 943-0416

Attorneys for Plaintiff and the proposed Class

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES NELSON, on behalf of himself and of all others similarly situated,<br><br>  Plaintiffs,<br><br>vs.<br><br>PVH CORP., A California Corporation, D/B/A Tommy Hilfiger, and DOES 1 to 10<br><br>  Defendants. | **CASE NO.**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 et seq.**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff James Nelson ("Plaintiff"), on behalf of himself and all others similarly situated, complains and alleges as follows:

## I. INTRODUCTION

1. Defendant PVH Corp., a California Corporation, D/B/A Tommy Hilfiger ("Defendant" or "Tommy Hilfiger") is a national retailer. To attract customers, Defendant aggressively advertises in numerous channels of media including radio, print, and online via the internet. During the course of these advertising campaigns, Defendant collects and stores data, including cellular telephone numbers, for the purpose of sending automated blast marketing messages to consumers' mobile phones in the form of Short Message Service ("SMS") text messages, the text messaging service component of mobile telephones.

2. The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* and its implementing regulations, 47 C.F.R. §64.1200, *et seq.* prohibit companies, such as Defendant, from sending automated SMS text messages to mobile telephones for the purpose of marketing or advertising without first obtaining the prior express written consent of the called party. *See In re Rules and Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1839, 1856-67 (Feb. 15, 2012) ("2012 TCPA Order"). The amended version of 47 C.F.R. § 64.1200 became effective on October 16, 2013. It states that:

> The term ***prior express written consent*** means an agreement, in writing, **bearing the signature of the person called** that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, **and the telephone number** to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(8) (emphasis in original).

///

///

3. 47 C.F.R. § 64.1200(f)(8)(i) mandates the content of the disclosures required for the prior express written consent:

> The [prior express] written [consent] agreement shall include a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

4. 47 C.F.R. § 64.1200(f)(3) provides that "[t]he term clear and conspicuous means a notice that would be apparent to the reasonable consumer, separate and distinguishable from the advertising copy or other disclosures."

5. At all times relevant herein, Defendant has violated, and continues to violate, the TCPA and its regulations by sending automated SMS marketing text messages to Plaintiff and the other Class member cellular telephone subscribers without obtaining their prior express written consent as required by the TCPA.

6. Defendant's mass marketing campaigns, as alleged herein, are a part of its common plan or scheme to aggressively market its products in direct violation of the TCPA.

7. By sending SMS marketing text messages to consumers without obtaining their prior express written consent, Defendant has caused consumers actual harm, including the aggravation and privacy invasion that accompanies receiving such illegal text messages. In particular, consumers are damaged by having to pay cellular telephone service providers for the receipt of Defendant's marketing text messages and must endure the aggravation and nuisance that accompanies the receipt of these text messages. Defendant's illegal text messages also diminish cellular battery life and waste data storage capacity.

///

Complaint for Damages Pursuant to the
Telephone Consumer Protection Act 47 U.S.C. § 227 et seq.

8. Plaintiff brings this suit under the TCPA on behalf of himself and a class of similarly situated persons. Plaintiff and the class seek an award of statutory damages, together with costs and reasonable attorney's fees.

## II. JURISDICTION AND VENUE

9. This Court has jurisdiction under 28 U.S.C. §1331. This case involves a question of federal law, 47 U.S.C. § 227, *et seq*. (TCPA). Damages are available under 47 U.S.C. § 227(b)(3).

10. Venue is proper in this District because Defendant engages in business in this District and a substantial part of the events or omissions giving rise to this claim occurred here.

## III. PARTIES

11. Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of California and the County of Orange. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

12. Plaintiff is informed and believes, and thereon alleges, that Defendant is, and at all times mentioned herein was, a California Corporation whose primary business address is in New York and is a "person," as defined by 47 U.S.C. § 153 (39).

13. Plaintiff alleges that, at all times relevant herein, Defendant conducted business in the State of California and in the County of Orange, and within this judicial district.

## IV. FACTUAL ALLEGATIONS

14. In recent years, marketers, who often felt stymied by federal or state laws limiting solicitations, have looked to alternative technologies through which to send bulk solicitations cheaply. One of the newest types of bulk marketing is through SMS. SMS allows marketers to send (and receive) short messages, usually limited to 160 characters, to (and from) cellular telephone subscriber's cellular telephone devices.

15. An SMS message is directed to a wireless device through use of the device's assigned telephone number. The message sender's telephone number is

1  preserved as part of the recipient's message, so that the recipient knows, at least by
2  number, who is sending the message.  When an SMS message is successful, the
3  recipient's cellular phone typically rings, alerting him or her that the phone is receiving
4  a text message.  As cellular telephones are inherently mobile and are frequently carried
5  on their owner's person, calls to cellular telephones, including SMS messages, may be
6  received by the called party virtually anywhere worldwide.

7       16.    The use of SMS messaging (known colloquially as "text messaging") has
8  become ever-present in the United States.

9       17.    Marketers have seized on this billion-dollar industry as a vast marketing
10 and exposure opportunity.  Using SMS technology, companies and individuals can now
11 extend the promotional reach of their products, brands, services and ideas to potentially
12 millions of consumers, almost instantaneously.  And, with SMS technology, marketers
13 know with near certainty that their message is received.

14      18.    Many companies, including Defendant, use automated computer
15 equipment to send bulk SMS text messages to cellular telephone subscribers using a
16 unique five or six digit number called "short code," as opposed to using an ordinary ten-
17 digit telephone number.  U.S. companies obtain short code numbers form an
18 independent agency, Neustar, Inc. ("Neustar"), which manages and assigns U.S. short
19 code numbers in order to run automated mobile text messaging applications.

20      19.    Unlike conventional solicitations, SMS text messages actually cost the
21 recipients of the marketing messages money.  Cellular telephone users must pay their
22 respective wireless service providers to receive text messages, either individually or as
23 part of a specified (and often limited) plan, regardless of whether or not the incoming
24 message is authorized.

25      20.    By sending such SMS text messages to consumers, Defendant has caused
26 consumers actual harm, including the aggravation and privacy invasion that
27 accompanies receiving unsolicited text messages.  Moreover, consumers are damaged
28 by having to pay cellular telephone service providers for the receipt of Defendant's

unsolicited text messages. These illegal text messages also harm consumers because they diminish cellular battery life and waste data storage capacity.

21. Pursuant to the TCPA, a company must obtain the prior express written consent of the called party before sending automated SMS marketing text messages to a cellular telephone. *See* 47 U.S.C. § 227, *et seq*. The written consent agreement must bear the signature of the called party and provide particular disclosures. 47 C.F.R. § 64.1200(f)(8). The subject disclosures must be made in "clear and conspicuous manner" as defined by the regulations. 47 C.F.R. § 64.1200(f)(3). Defendant did not obtain the prior express written consent of Plaintiff or of any member of the Class to receive marketing text messages. Nonetheless, Defendant has sent, and continues to send, marketing text messages to Plaintiff and to the Class. In hundreds, if not thousands of instances, Defendant sent SMS text messages to Plaintiff and Class members without obtaining their prior express written consent as mandated under 47 C.F.R. § 64.1200(f)(8)(i).

**A.    CONTACT WITH PLAINTIFF**

22. On September 19, 2014, Plaintiff received the following text from Defendant:

> Thx 4 joining Tommy Mobile Alerts! Exclusive promos & news. 4msgs/mo. @ this#. TOMMY STOP 2STOP. TOMMY HELP 4info. Msg&DataRatesMayApply . http://bit.ly/tommyTC

23. Also on September 19, 2014, Plaintiff received the following text from Defendant:

> TOMMY VIP OFFER: Don't miss out! 40% off Select Styles + 15% off 5+ items or 10% off 3+ items. Ends 9/28 Show Code #<u>500006588000</u>
> Reply TOMMY STOP to STOP

///

///

///

24. On September 25, 2014, Plaintiff received the following text message from Defendant:

> TOMMY VIP OFFER: Last chance to take 40% off Select Styles + 15% off 5+ items or 10% off 3+ items. Ends 9/28 Show Code #500006588000 Reply TOMMY STOP to STOP

25. On October 9, 2014, Plaintiff received the following text message from Defendant:

> TOMMY VIP OFFER: Columbus Day Sale 30-40% off all Sweaters & Outerwear + 20% off $150+ or 15% off entire! Ends 10/15 Show #500006589000 Reply TOMMY STOP to STOP

26. On October 13, 2014, Plaintiff received the following text message from Defendant:

> TOMMY VIP OFFER: Happy Columbus Day! 30-40% off all Sweaters & Outwear + 20%off $150+ or 15%off entire! Ends 10/15 Show #500006589000 Reply TOMMY STOP to STOP

27. On October 30, 2014, Plaintiff received the following text message from Defendant:

> TOMMY VIP OFFER: 30-40% off Holiday Prep Event + 20% off $100+ or 15% off entire! Ends 11/12 Show #500008185000 Reply TOMMY STOP to STOP

28. On November 12, 2014, Plaintiff received the following text message from Defendant:

> TOMMY VIP OFFER: 30-50% Annual Holiday Sale + 20% off your entire purchase! Ends 11/23 Show #500008186000 Reply TOMMY STOP to STOP

29. The SMS short code number for all of the unauthorized text messages that Plaintiff received was 289784.

///

30. The content of the text messages Plaintiff received was generic, impersonal and commercial in nature, indicating that they were sent to a group of consumers *en masse*.

31. Defendant did not at any time request or obtain Plaintiff's prior express written consent to receive text messages utilizing a prerecorded, artificial voice or ATDS, pursuant to 47 U.S.C. § 227(b)(1)(A).

32. The telephone number to which Defendant, or its agents, texted was assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227 (b)(1).

33. The last four digits of Plaintiff's cellular telephone number are "2628."

34. The text messages from Defendant, or its agents, constituted calls that were not for emergency purposes as defined by 47 U.S.C. §227 (b)(1)(A)(i).

35. Defendant sent these text messages via an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1).

36. This ATDS utilized by Defendant has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.[1]

37. This ATDS utilized by Defendant also has the capacity to automatically dial telephone numbers from a list or database of telephone numbers without human intervention.[2]

---

[1] "The statutory definition contemplates autodialing equipment that either stores or produces numbers" and the equipment need only have the "*capacity* to store or produce telephone numbers." *See In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 2003* WL 21517853, 18 F.C.C.R. 14115 (FCC July 3, 2003) (Italics in original) (underlining added). The statutory phrase "using a random or sequential number generator" modifies only the last antecedent "produce telephone numbers" and not the word "to store," as it makes no sense to say that one could "store" numbers using a number generator.

[2] The FCC has emphasized that the ATDS definition covers any equipment "that has the specified capacity to generate numbers and dial them without human intervention *regardless of whether the numbers called are randomly or sequentially generated or come from calling lists*." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C. Rcd 15391, 15392 n.5 (2012) (emphasis modified).

38. The text messages from Defendant also constitute artificial or prerecorded voice calls pursuant to 47 U.S.C. §227(a)(1).

39. The text messages were sent utilizing an ATDS and/or artificial or prerecorded voice messages, as alleged herein, from Defendant, or its agents, to Plaintiff's and the Class members' cellular telephones and were sent by Defendant without their "prior express written consent" as required under 47 C.F.R. § 64.1200(a)(2).

40. Plaintiff alleges that the text messages from Defendant, as alleged herein, were sent to Plaintiff and Class members without their "prior express written consent" in violation of 47 U.S.C. § 227(b)(1).

41. Upon reasonable investigation into the Defendant's calling patterns, Plaintiff alleges that the Defendant, individually or through its agents, placed or directed the mass placement of text messages to cell phones nationwide without the prior express written consent of the parties called from October 16, 2013 to the date this complaint was filed.

42. The data and information collected by Defendant, as alleged herein, including the prior express written consents required under 47 C.F.R. § 64.1200(a)(2) are contained in Defendant's records.

## V.   CLASS ACTION ALLEGATIONS

43. Plaintiff brings this action on behalf of himself, and on behalf of all others similarly situated, pursuant to Federal Rule of Civil Procedure, Rules 23(a) and 23(b). The Class that Plaintiff seeks to represent is defined as follows:

> All persons within the United States to whose cellular telephone number Defendant placed a telephone call via text message from October 16, 2013 to the date notice is mailed to the Class.

Excluded from the Class are all persons from whom Defendant obtained prior express written consent, within the meaning of 47 C.F.R. § 64.1200(a)(2), to send texts.

Also excluded from the Class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time, or to propose or eliminate sub-Classes in response to facts learned through discovery or legal arguments advanced by Defendants or otherwise.

44. <u>Numerosity</u>: The Class is so numerous that the individual joinder of all members thereof is impracticable under the circumstances of this case. While the exact number of Class members is unknown at this time, Plaintiff is informed and believes that the entire Class consists of approximately tens of thousands of members.

45. <u>Commonality</u>: Common questions of law or fact are shared by Class members. This action is suitable for class treatment, because these common questions of fact and law predominate over any individual issues. Such common questions include, but are not limited to, the following:

    a.    Whether Defendant obtained prior express written consent, within the meaning of 47 C.F.R. § 64.1200(a)(2), to send text messages to Plaintiff and Class members;

    b.    Whether Defendant made text calls to the Class using an automatic telephone dialing system and/or autodialer and/or an artificial or prerecorded voice;

    c.    Whether Defendant's conduct violates 47 U.S.C. § 227(b)(1(A);

    d.    Whether Defendant's conduct violates 47 C.F.R. § 64.1200(a)(1);

    e.    Whether Plaintiff and the Class members are entitled to damages, costs and/or attorney's fees from Defendant;

///

///

   f. Whether Plaintiff and the Class members are entitled to increased damages (equal to not more than three times the amount of damages) based on the willfulness of Defendant's conduct; and

   g. Whether Defendant's affirmative defenses, if any, raise common issues of fact or law as to Plaintiff and Class members as a whole.

46. <u>Typicality</u>:  Plaintiff's claims are typical of the claims of absent Class members.  Plaintiff and the other Class members were subjected to the same kind of unlawful conduct and the claims of Plaintiff and the other Class members are based on the same legal theories.

47. <u>Adequacy</u>: Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other members of the Class Plaintiff seeks to represent.  Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends on prosecuting this action vigorously.  The interests of members of the Class will be fairly and adequately protected by Plaintiff and his counsel.

48. <u>Ascertainable Class</u>:  The proposed class is ascertainable in that the members can be identified and located using information contained in Defendant's records.

49. This case is brought and can be maintained as a class action under Rule 23(b)(1) and 23(b)(3):

   a. <u>Prosecuting Separate Actions Would Create Risk Of</u>:

    i. Inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Defendant; or

    ii. Adjudications with respect to individual Class members, which would, as a practical matter, be dispositive of the interests of the other Class members not parties to the

        adjudications, or substantially impair or impede their ability to protect their interests;

    b. <u>Predominant Questions of Law or Fact</u>: Questions of law or fact common to all Class members, including those identified above, predominate over questions affecting only individual Class members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would require. Moreover, absent class treatment of this controversy, the amount of individual Class members' losses in comparison to the enormous cost of litigation makes it almost certain that few Class members would ever be able to even seek, let alone obtain, redress for their injuries.

## FIRST CAUSE OF ACTION

**(Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A) and Implementing Regulations, 47 C.F.R. § 64.1200(a)(1), On Behalf of Plaintiff and the Class)**

50. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

51. The TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), makes it "unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice... to any telephone number assigned to a . . . cellular telephone."

52. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(a)(1), further provides that "[n]o person or entity may . . . initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . [t]o any telephone number assigned to a . . . cellular telephone." A text message is a "call" within the meaning of the TCPA. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009).

53. Defendant violated both 47 U.S.C. § 227(b)(1)(A)(iii) and its implementing regulation, 47 C.F.R. § 64.1200(a)(1). Defendant made or initiated, or caused to be made or initiated, unauthorized text calls to Plaintiff and members of the Class using an automatic telephone dialing system ("ATDS") and/or autodialer, within the meaning of 47 U.S.C. § 227(a) and 47 C.F.R. § 64.1200(f)(2). An ATDS includes equipment that has "the capacity to store or produce numbers and dial those numbers at random, in sequential order, or **from a database of numbers**." *See In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2003 WL 21517853, 18 F.C.C.R. 14014 ¶ 131 (FCC July 3, 2003) (emphasis added) (noting that the basic function of an ATDS is "the capacity to dial numbers without human intervention" and that excluding from the definition of an ATDS various autodialing equipment "simply because it relies on a given set of numbers would lead to an unintended result," and that "the purpose of the requirement that equipment have 'the capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented"); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2008 WL 65485, 23 F.C.C.R. 559 ¶ 12 (FCC Jan 4, 2008) (rejecting argument that "[equipment] meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists"); *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C. Rcd 15391, 15392 n.5 (FCC 2012) (ATDS includes any equipment "that has the

specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists").

54. Defendant's equipment has the capacity to, and did in fact, store and dial Plaintiff's and the Class' telephone numbers from its database without human intervention.

55. In addition to autodialing phone numbers from its database, the equipment Defendant used also has the capacity to produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.

56. By using such equipment, Defendant was able to make thousands upon thousands of text calls to consumers automatically without human intervention. These calls were made *en masse* and without the prior consent of Plaintiff and members of the Class.

57. In addition, and alternatively, Defendant's unauthorized text calls to Plaintiff and members of the Class were made using "an artificial or prerecorded voice" within the meaning of 47 U.S.C. § 227(b)(1)(A) and 47 C.F.R. § 64.1200(a)(1). The term "voice" is not limited to verbal communications, and includes written expressions. *See, e.g., Dictionary.com*, http://dictionary.reference.com/browse/voice (last visited June 22, 2014) (defining "voice" as, among other things, "expression in spoken or written words, or by other means"); Collins English Dictionary, http://www.collinsdictionary.com/ dictionary/english/voice (defining "voice" to include "written or spoken expression") (last visited June 22, 2014). The adjective "artificial" includes communications "produced by man" that are "not occurring naturally." Collins English Dictionary, http://www.collinsdictionary.com/dictionary/ english/ artificial (last visited June 12, 2014). The adjective "prerecorded" includes communications "containing previously recorded information." *Dictionary.com*, http://dictionary.refer ence.com/browse/voice (last visited June 22, 2014). Text messages, such as the text messages here, that are not sent contemporaneously at the time they are drafted

constitute an "artificial or prerecorded voice" since they are written expressions, not naturally occurring that contain previously recorded information. On information and belief, all of Defendant's messages, after they are created, are first stored in a "message queue" before being delivered via SMS.

58. As a result of Defendant's unlawful conduct, Plaintiff and members of the Class have suffered actual damages and, under section 227(b)(3)(B), are each entitled, *inter alia*, to receive a minimum of $500.00 in damages for each such violation of the TCPA and its implementing regulations.

59. To the extent that Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to section 227(b)(3), increase the amount of damages recoverable by the Class members in accordance with the said statutory provisions.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class, request the following relief:

A. That the Court enter an order certifying the Class and appointing Plaintiff as the representative of the Class and appointing counsel for Plaintiff as counsel for the Class;

B. That the Court enter an order declaring that Defendant's actions, as set forth above, violated the TCPA, 47 U.S.C. §§227(b) and its implementing regulations;

C. That the Court enter judgment against Defendant for statutory damages and, if its conduct is proved willful, award Plaintiff and the Class increased damages equal to no more than three times their damages;

D. That the Court award Plaintiff and the Class their costs and expenses, as well as reasonable attorneys' fees, in prosecuting this action;

E. That the Court award Plaintiff and the Class post-judgment interest; and

///

14

Complaint for Damages Pursuant to the
Telephone Consumer Protection Act 47 U.S.C. § 227 et seq.

F.  That the Court award such other and further relief as may be necessary or appropriate.

DATED: April 1, 2015

**HOWARD LAW PC**

/s/ Gregory H. D. Alumit
VINCENT D. HOWARD
GREGORY H. D. ALUMIT

**ARBOGAST LAW**
A Professional Corporation
DAVID M. ARBOGAST

*Attorneys for Plaintiff and Proposed Class*

## TRIAL BY JURY

Plaintiff is entitled to and hereby demands a trial by jury.

DATED: April 1, 2015

**HOWARD LAW PC**

/s/ Gregory H. D. Alumit
VINCENT D. HOWARD
GREGORY H. D. ALUMIT

**ARBOGAST LAW**
A Professional Corporation
DAVID M. ARBOGAST

*Attorneys for Plaintiff and Proposed Class*

Complaint for Damages Pursuant to the
Telephone Consumer Protection Act 47 U.S.C. § 227 et seq.